UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:10-cr-14-3 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| BERNARD J. KURLEMANN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER THAT: (1) DEFENDANT KURLEMANN'S MOTION TO DISMISS THE
BANKRUPTCY CHARGES (Doc. 30) BE DENIED; (2) DEFENDANT
KURLEMANN'S MOTION FOR PRETRIAL DETERMINATION OF A
CONTROLLING LEGAL ISSUE (Doc. 31) BE GRANTED; AND (3) DEFENDANT
KURLEMANN'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER AND
TO SEVER BANKRUPTCY COUNTS (Doc. 33) BE DENIED**

This criminal case is before the Court on: (1) Defendant's motion to dismiss the

bankruptcy charges (Counts 8, 9, and 10) (Doc. 30); (2) Defendant's motion for pretrial

determination by the Court of a controlling legal issue, or, in the alternative, for a trial to

the bench on the bankruptcy charges; (3) Defendant's motion for relief from prejudicial

joinder and to sever bankruptcy counts (Doc. 33); and (4) the government's responsive

memoranda (Docs. 41, 42, 44).

## I.    SUMMARY OF FACTS AS ALLEGED BY THE UNITED STATES

From 2006 to 2007, Defendant Bernard Kurlemann and his various LLC's were

experiencing significant financial pressure.  Kurlemann was carrying a short term loan

debt of more than $20 million and was unable to sell a number of his multi-million dollar

homes.  In addition, in October 2006, Kurlemann's company, Kurlemann Builders, Inc.

("KBI"), was sued in an aggressively litigated lawsuit brought by John and Connie Musuraca. Legal fees in that case were more than a half-million dollars.

On or about August 16, 2007, the day before jury selection in the Musuraca trial, KBI transferred real estate known as Lot 100 of the Woods ("Lot 100") to RNS Property Management, Inc. ("RNS") because Kurlemann wanted to borrow money from Robert Sibcy who owned RNS. Kurlemann asked Sibcy to buy the lot because Kurlemann was short on cash and could not carry the lot but wanted to hold on to the inventory. The agreement was that RNS would give Kurlemann a loan, in the form of purchasing the lot, and then hold the lot for one year for Kurlemann, after which Kurlemann would buy Lot 100 back from RNS. This was a gentlemen's agreement which Sibcy considered as a favor to Kurlemann.

The agreed upon purchase price of the lot was approximately $220,000; approximately $116,000 paid off the existing mortgage and the rest, approximately $103,000, went to Kurlemann. RNS purchased the lot as a loan to Kurlemann, thereby carrying inventory for Kurlemann and KBI even though the lot was out of KBI's name.

RNS kept track of any expenses associated with holding the property because the agreement was that they would be charged back to Kurlemann. As extra collateral on the loan, Sibcy requested that Kurlemann give RNS a mortgage on Kurlemann's residence at the time, 6576 Sherbourne Court, in the amount of the loan or purchase price, *i.e.*, $220,000. This mortgage matured on August 1, 2008, approximately one year after the

-2-

purchase. Therefore, if Kurlemann could not re-purchase Lot 100 within a year, RNS would sell the lot to a third party. If the purchase price fell below the loan amount, then RNS would have the mortgage on Kurlemann's home to secure the remaining loan amount.

A jury found in favor of the Musuracas, and the court entered a final judgment of $1,152,073.50 against KBI in January 2008. In or about February 2008, Kurlemann began designing a market home to be built on Lot 100 for himself and his family.

Kurlemann filed KBI's bankruptcy petition on March 3, 2008. The Muscuracas are the largest creditors listed in the bankruptcy case with a debt in the amount of approximately $1,152,073.50 out of total debts of approximately $1,857,880.43. Kurlemann was the president and owner of KBI and signed the bankruptcy petition, bankruptcy schedules, and bankruptcy statement of financial affairs on behalf of KBI. In the bankruptcy, he failed to disclose his agreement with RNS to buy back the property. He only listed the transfer of the property to RNS but not the option to re-purchase the lot by either himself or any of his entities, including KBI. This material omission was allegedly intended to defraud the Musuracas and other creditors in the bankruptcy case by allegedly depriving them of the value of the agreement, option, or understanding for the purchase or re-purchase of Lot 100.

On or about April 11, 2008, Kurlemann exercised this option, and RNS transferred the lot back to Kurlemann via Kurlemann Custom Homes ("KCH") for approximately

-3-

$235,000.  The purchase price included interest and costs.  The 341 deposition for the

bankruptcy took place earlier that morning.  When asked whether KCH received any of

KBI's assets, Kurlemann said "no."  KCH subsequently transferred the lot to

Kurlemann's wife, Cathy Kurlemann.  Defendant and his family currently live in a house

worth more than $1 million that sits on Lot 100.

## II.    STANDARD OF REVIEW

Motions to dismiss indictments are governed by Rule 12 of the Federal Rules of

Criminal Procedure, which states "[a]ny defense, objection, or request which is capable of

determination without the trial of the general issue may be raised before trial by motion."

Fed. R. Crim. P. 12(b).  The Sixth Circuit guides district courts to "dispose of all motions

before trial if they are capable of determination without trial of the general issue."  *U.S. v.

Jones,* 542 F.2d 661, 665 (6th Cir. 1976).  Moreover, "Rule 12 vests the Court with

authority 'to determine issues of fact in such manner as the court deems appropriate.'"  *Id.*

(quoting Notes of the Advisory Committee to Fed. R. Crim. P. 12, reprinted in 8 Moore,

Federal Practice 12.01(3) at 12-8 (2d ed. 1976)).

The Federal Rules of Criminal Procedure "clearly envision that a district court may

make preliminary findings of fact necessary to decide the questions of law presented by

pre-trial motion so long as the court's findings on the motion do not invade the province

of the ultimate finder of fact."  *Jones,* 542 F.2d at 664; *see also U.S. v. Craft,* 105 F.3d

1123, 1126 (6th Cir. 1997) ("District Courts may ordinarily make preliminary findings of

fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder."). A defense raised in a motion to dismiss an indictment is "capable of determination if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Jones,* 542 F.2d at 664 (citing *United States v. Covington,* 395 U.S. 57, 60 (1969)).

On a motion to dismiss an indictment, "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the [i]ndictment is 'valid on its face.'" *U.S. v. Campbell,* No. 02-80863, 2006 U.S. Dist. LEXIS 16779, at *2 (E.D. Mich. Apr. 6, 2006) (citing *Costello v. United States,* 350 U.S. 359, 363 (1956)). Accordingly, the court must resolve factual issues in this case, such as they exist, in favor of the indictment. With this standard in mind, the Court turns to an analysis of Defendant's motion.

## III.    ANALYSIS

### A.    Motion To Dismiss The Bankruptcy Charges (Counts 8, 9, and 10)

Defendant argues that the Court should dismiss Counts 8-10 of the superseding indictment because each fails to state the elements of the statutory offense charged in the count.

-5-

### 1. Sufficiency of the pleadings

#### a. Elements of offense for bankruptcy fraud

The superseding indictment charges that Kurlemann committed bankruptcy fraud in violation of 18 U.S.C. §157. (Doc. 25 at ¶¶ 54-76). There are three elements for this offense:

1. Kurlemann devised a scheme to defraud or intended to later formulate a scheme to defraud as described in the superseding indictment;

2. Kurlemann filed or caused the filing of a petition under title 11, bankruptcy schedules, or a bankruptcy statement of financial affairs; and

3. Kurlemann did so for the purpose of executing or concealing such a scheme.

*United States v. Wagner*, 382 F.3d 598, 612 (6th Cir. 2004); *United States v. McBride*, 362 F.3d 360, 373 (6th Cir. 2004); *United States v. DeSantis*, 237 F.3d 607, 613 (6th Cir. 2001).

The superceding indictment tracks the language of the statute and alleges that Kurlemann devised a scheme to defraud, that he filed a bankruptcy petition, bankruptcy schedules, and bankruptcy statement of financial affairs, and that he filed these documents for the purpose of executing or concealing his scheme to defraud. (Doc. 25 at ¶¶ 54-76). The superceding indictment also identifies Kurlemann's materially false statements and his concealment of material facts. (*Id.* at ¶¶ 73-75).

-6-

### b. *Elements of offense of concealment of assets*

The superseding indictment further charges that Kurlemann concealed assets in

violation of 18 U.S.C. §152(1). (Doc. 25 at ¶¶ 77-78). There are four elements for this

offense:

1. A bankruptcy proceeding existed under Title 11, which is the bankruptcy code.

2. Kurlemann concealed interests in property from any creditor or the bankruptcy trustee;

3. Such interests in property belonged to the bankruptcy estate of Kurlemann Builders, Inc.; and

4. Kurlemann acted knowingly and fraudulently.

*United States v. Wagner*, 382 F. 3d 598, 607-610 (6th Cir. 2004).

The superceding indictment states that Kurlemann knowingly and fraudulently

concealed from the trustee and creditors the interest and value of the agreement,

understanding, and right for the purchase or repurchase of Lot 100, which property

belonged to the bankruptcy estate of KBI. (Doc. 25 at ¶¶ 77-78).

### c. *Elements of offense of making false oaths*

The superseding indictment further charges that Kurlemann made false oaths in

violation of 18 U.S.C. §152(3). (Doc. 25 at ¶¶ 79-85). The five elements for this offense

are:

1. On or about March 3, 2008, a proceeding in bankruptcy existed;

2. Kurlemann made or caused to be made a false declaration or statement in

-7-

that bankruptcy proceeding, or in relation to that bankruptcy proceeding as set forth in Count 10 of the superseding indictment;

3.   The declaration or statement related to some material matter;

4.   The declaration or statement was false; and

5.   Kurlemann made such declaration or statement knowingly and fraudulently.

*United States v. Ellis*, 50 F.3d 419, 422-423 (7th Cir. 1995); *United States v. Gellene*, 182 F.3d 578, 586-87 (7th Cir. 1999); *United States v. Overmyer*, 867 F.2d 937, 949 (6th Cir. 1989) (false proof of claim).

Count ten charges that Kurlemann knowingly and fraudulently made false declarations and omissions as to material matters in and in relation to the bankruptcy case of KBI when he falsely stated that the value received for the transfer of Lot 100 was $220,000,00, when, in fact, the value of the transfer of Lot 100 also included the value of the option to purchase or repurchase Lot 100.  (Doc. 25 at ¶¶ 79-85).

## 2.   *The value of the undisclosed option to purchase or repurchase lot 100*

Kurlemann argues that while paragraphs 76 (Count 8), 78 (Count 9), and 85 (Count 10) claim that his failure to disclose the purported option to purchase Lot 100 deprived the creditors of the value of the purported option to purchase Lot 100, the superseding indictment does not allege the value of the purported option to the creditors, nor that the value was material to the bankruptcy.  (Doc. 30 at 6).  Kurlemann further contends that the superseding indictment "does not allege that, had the Trustee liquidated

-8-

the purported option, it would have resulted in a material benefit to the creditors." *Id.*

However, the value of the option is irrelevant. The superseding indictment does not have to place a value on the option for any of the charges. *Wagner*, 382 F.3d at 610 ("[T]here is no materiality requirement in §152(1)."); *United States v. Ward*, 197 F.3d 1076, 1083 (11th Cir. 1999) (holding that the value of property concealed is not an element under 18 U.S.C. §152).

Section 152(1) of Title 18 only requires that Kurlemann's false statement, or omission, have a natural tendency to influence or is capable of influencing the trustee or creditors. *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001) (in prosecution under 18 U.S.C. §1001, Court of Appeals noted that the materiality requirement is a low bar for the government to meet). Materiality is determined by reference to Kurlemann's statements. It is not evaluated based upon the value of any assets.

In the *Lindholm* case cited by Kurlemann, the Ninth Circuit Court of Appeals explained that the scope of materiality includes matters relating to the nature of the debtor's assets, inquiries relating to debtor's business transactions, matters relating to the discovery of assets, and the history of debtor's financial transactions, not the value of assets. *United States v. Lindholm*, 24 F.3d 1078, 1083 (9th Cir. 1994). Moreover, materiality does not require that Kurlemann's false statement actually harm the creditors or the trustee. *United States v. Key*, 859 F.2d 1257, 1261 (7th Cir. 1988); *Lindholm*, 24 F.

-9-

3d at 1083; *United States v. Siemaszko*, No. 09-3167, 2010 U.S. App. LEXIS 14497 (6th Cir. July 15, 2010) (holding that 18 U.S.C. §1001 does not require proof that false statement actually influenced government).

Because the superseding indictment is not required to allege a value to the option, the motion to dismiss is denied in that respect.

### 3. *Whether the option was property of the KBI estate*

Defendant claims that the superseding indictment does not allege that the purported option to purchase the lot was property owned by KBI or that it was property belonging to the estate of KBI in bankruptcy.[1] Defendant alleges that the superseding indictment shows that the purported option, if it existed at all, belonged to Kurlemann individually or to his personal residence, because the indictment alleges that he secured the option with a mortgage on his personal residence and alleges that the option belonged to "Mr. Kurlemann or entities he controlled or with which he was associated," without alleging specifically that it belonged to KBI. (Doc. 25 at ¶¶ 69, 70).

The superseding indictment acknowledges that Mr. Kurlemann properly disclosed in the KBI bankruptcy that seven months before KBI filed bankruptcy, it sold Lot 100 to RNS for the fair market value of $220,000 and used the net proceeds to pay bills. (Doc.

---

[1] The bankruptcy code's definition of "property of the estate" is broad. 11 U.S.C. § 541(a)(1) and (a)(6) (stating that "property" includes "all legal or equitable interests of the debtor in property" and "[p]roceeds, product, offspring, rents, or profits of or from property of the estate"); *In re Yonikus*, 974 F.2d 901, 904-05 (7th Cir. 1992) ("The legislative history of § 541(a) in both the House and Senate provides, "The scope of this paragraph is broad, it includes all kinds of property, including tangible or intangible property.").

-10-

25 at ¶ 83).

Kurlemann answered question number 10 in the KBI "Statement of Financial

Affairs," as follows:

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| RNS Property Management, Inc. | 8/16/07 | Debtor sold Lot 100 of the Woods (fka Lots 70-72 and Lots 62-68 Replated -nka 6592 Sherbourne Ct) on 8/16/07 to RNS Property Management, Inc (not related to debtor) for fmv of $220,000. Debtor netted $103,485.99. Funds used to pay bills. |

The government bases its allegation that there was a purported option that

Kurlemann failed to disclose in the KBI bankruptcy upon the following facts:

69. As part of the transaction involving the transfer of the real estate known as Lot 100 to RNS, RNS agreed that defendant BERNARD J. KURLEMANN or entities he controlled or with which he was associated could purchase or repurchase Lot 100 within one year of August 16, 2007, the date of the transfer from KBI to RNS.

70. As part of the transaction involving the transfer of Lot 100 to RNS, or about August 16, 2007, RNS took a mortgage on defendant BERNARD J. KURLEMANN's personal residence, 6576 Sherbourne Court, Mason, Ohio, in the amount of $220,000, for the purchase price of Lot 100, with a maturity date of August 1, 2008 as collateral and security for the agreement. RNS requested this mortgage to insure that defendant KURLEMANN would either purchase or repurchase Lot 100 as agreed or be liable for the amount that RNA paid for Lot 100.

(Doc. 25 at ¶¶ 69, 70). Accordingly, the superceding indictment does state that defendant

-11-

Kurlemann "or entities he controlled or with which he was associated" had an option to

purchase Lot 100. (Doc. 25 at ¶ 69). KBl was one of those entities.[2]

    Additionally, the superceding indictment alleges that:

71. On or about April 11, 2008, RNS sold Lot 100 to KCH for the sum of
approximately $235,000.00 and released the mortgage on defendant
BERNARD J. KURLEMANN's residence.

72. The construction loan KCH obtained from Union Savings Bank in the amount
of approximately $800,000.00 used to purchase Lot 100, contained a false
statement that Lot 100 was pre-sold to a customer when in fact, defendant
BERNARD J. KURLEMANN intended to build a market home on Lot 100
which he was going to use as his new personal residence.

(Doc. 25 at ¶¶ 71-72). Therefore, the superceding indictment alleges that the option was

in fact exercised by KCH (one of Kurlemann's entities), not Kurlemann himself. The 341

deposition for the bankruptcy took place on the morning of April 11, 2008 (the same day

the Lot was sold to KCH). When asked whether KCH received any of KBl's assets,

Kurlemann said "no." (4/11/08 B. Kurlemann Dep. at 8).

    Furthermore, the superceding indictment alleges that:

78. Defendant BERNARD J. KURLEMANN did knowingly and fraudulently
conceal, by withholding information and refusing to disclose information,
from creditors and the bankruptcy trustee in connection with a case under the
Bankruptcy Code known as "Kurlemann Builders, Inc.," Case No.: 08-11006,
property belonging to the estate of the debtor, to wit: the interest and value of
the agreement, understanding, and right provided by RNS for the purchase or
repurchase of Lot 100 as part of the transaction on August 16, 2007 for the
sale by KBI of Lot 100.

(Doc. 25 at ¶ 78). Accordingly, the superceding indictment expressly alleges that the

option to purchase Lot 100 was property belonging to the estate of KBI.

---

[2] Kurlemann was the president and majority owner of both KBI and KCH. (Doc. 25 at ¶ 54).

Kurlemann had an affirmative duty to identify all of KBI's assets and answer all of the questions in the bankruptcy documents completely and honestly. *United States v. Sobin*, 56 F.3d 1423, 1428 (D.C. Cir. 1995). The government maintains that these assets included the option to purchase or repurchase Lot 100. *United States v. Smithson*, 49 F.3d 138 (5th Cir. 1995) (affirming convictions for fraudulently concealing real estate option contracts). Kurlemann had the duty to disclose any assets, including the option, even if he believed that the immediate status of this option was uncertain. *United States v. Cherek*, 734 F.2d 1248, 1254 (7th Cir. 1984) (finding that it does not matter if an asset is ultimately found not to be property of the estate, "the statute requires a bankrupt to disclose the existence of assets whose immediate status in bankruptcy is uncertain").[3] Property of the estate includes all legally recognizable interests, even contingent interests. *In Re Four Star Constr. Co.*, 151 B.R. 817, 820 (Bankr. N.D. Ohio 1993). Property belonging to the estate specifically includes real estate option contracts. *United States v. Smithson*, 49 F.3d 138 (5th Cir. 1995) (affirming convictions for fraudulently concealing real estate option contracts).[4]

---

[3] *See also United States v. Beard*, 913 F.2d 193, 197 (5th Cir. 1990) (following *Cherek* and holding that defendant was under duty to disclose an asset even if asset ultimately determined not to be part of bankruptcy estate); *United States v. Van Allen*, 524 F.3d 814, 822 (7th Cir. 2008) ("Even if Van Allen believed his interest in his auto parts business was unavailable to the bankruptcy estate because a sole proprietorship did not constitute "property" under Illinois or federal law, considering the broad scope of the definition, he nevertheless had a duty to report it.").

[4] *See also In re Buckner*, 224 B.R. 760, 762 (Bankr. E.D. Mo. 1998) (explaining that a debtor must schedule his participation in an option contract, and that the option contract is property of the bankruptcy estate).

On a motion to dismiss an indictment this Court must view the indictment's factual allegations as true and determine if the indictment is valid on its face. The Court finds that the superceding indictment properly alleges facts to support Counts 8, 9, and 10. Therefore, Defendant's motion to dismiss the bankruptcy charges is **DENIED**.

**B. Motion For Pretrial Determination By The Court Of A Controlling Legal Issue, Or, In The Alternative, For A Trial To The Bench On The Bankruptcy Charges**

Next, Defendant requests that the Court determine in advance of any trial of the bankruptcy charges, the controlling issue of law which requires application by the Court of the Statute of Frauds, the Rule Against Perpetuities, contract law, and corporate bankruptcy law. In the alternative, Kurlemann requests that the Court conduct the trial of the bankruptcy charges without a jury.

It is undisputed that there is no written option. Accordingly, Defendant claims that any oral option granted by RNS to purchase Lot 100 was void *ab initio* under the Ohio Rule Against Perpetuities (Ohio Rev. Code § 2131.08), and unenforceable under Ohio contract law (Ohio Rev Code § 1335.05), and the Ohio Statute of Frauds (Ohio Rev. Code § 1335.04).

This Court does not dispute that, generally, interests in land must be in writing to be legal. Notwithstanding this general proposition of law, Defendant cannot contest the legality of the option contract in the instant case.

-14-

### 1. Standing

Defendant Kurlemann does not have standing to argue that the option was not enforceable. With KBI's bankruptcy filing, the trustee became the only party with standing to pursue any possible causes of action against RNS. *Folz v. BancOhio Nat. Bank*, 88 B.R. 149, 150 (S.D. Ohio 1987) ("Since the Bankruptcy Act vests in the trustee, the rights of action involved in the federal claims, the Leonards cannot sue on the federal claims unless the trustee has abandoned the causes of action."); *Parker v. Wendy's Int'l., Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) (holding that trustee is the only party to pursue causes of action).

In any action against RNS, the trustee would be seeking to enforce the option or recover funds for the benefit of the KBI bankruptcy estate. Kurlemann lacks standing to assert any possible defenses that could be raised by RNS in any action brought by the trustee to enforce the option.

### 2. Statutory Provisions

Moreover, the option contract is legal under exceptions to the Ohio statutes. In any action against RNS to enforce the option, there are exceptions to the statute of frauds, each of which could be raised to defeat the statute of frauds.

First, this defense fails when it is asserted to perpetuate a fraud. *Wilber v. Paine*, 1 Ohio 251, 256-57 (1824); *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 622 N.E. 2d 1093, 1100, 87 Ohio App. 3d 613, 673 (8th Dist., 1993) (stating

-15-

that statute of frauds may not be interposed in furtherance of a fraud); *Kirk v. Hamilton*,

102 U.S. 68, 77 (1880) ("But it is equally well settled that equity will not allow the statute

to be used as a means of effecting the fraud which is was designed to prevent"). As

summarized in Ohio Jurisprudence:

> Since the general purpose of the Statute of Frauds is to prevent
> and not to perpetuate fraud, the court will not permit the statute to be
> used as a shield to protect fraud or as an instrument of fraud and
> injustice.

*Ohio Jurisprudence*, Third Edition, Section, Vol. 51 at 293 (2002). The superseding

indictment charges that Kurlemann defrauded his creditors and the bankruptcy trustee and

that Kurlemann's calculated decision to hide the option by deliberately keeping it out of

the written record was part of his scheme to defraud. RNS acquiesced to this action.

Because Kurlemann concealed the option agreement as part of his scheme to defraud with

the consent of RNS, the statute of frauds would not apply to defeat any action filed

against RNS to enforce the option.

Second, performance of the option, either part performance or full performance,

defeats any affirmative defense of the statute of frauds. This affirmative defense fails

where there has been at least part performance. *Ferguson v. Strader*, 731 94 Ohio App.

3d 622, 627 (12th Dist. 1994) ("Even if this agreement were considered a lease, it is taken

out of the Statute of Frauds by the doctrine of "part performance.""); *Bumgarner v.

Bumgarner*, No. 09CA22, 2010 Ohio App. LEXIS 1587, at *5 (4th Dist. 2010) (holding

that part performance creates an exception to Statute of Frauds); *Cunningham v. Miller*,

-16-

No. 2009-T-0092, 2010 Ohio App. LEXIS 2102, at *5 (11th Dist. 2010) (quoting from earlier decision that "Ohio courts have consistently recognized the doctrine of part performance as an exception to the statute of frauds."). Additionally, the statute of frauds does not apply to executed contracts. *Pettett v. Cooper*, 62 Ohio App. 377, 383-84 (1st Dist. 1939), cited in Ohio Jurisprudence, Third Edition, Vol. 51, Section 117 at 248, n. 5 (2002). The superseding indictment recounts that Kurlemann executed the option. (Doc. 25 at ¶ 71) (reciting that RNS sold Lot 100 to Kurlemann Custom Homes, Inc. on April 11, 2008). Therefore, there has been either part performance or full performance of the option, which defeats the affirmative defense of the statute of frauds.

Third, the statute of frauds may be waived. *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F. 2d at 547 (6th Cir. 1981). Therefore, in any action against RNS, RNS could waive the statute of frauds as a defense.

In short, Kurlemann lacks standing to assert the statute of frauds defense. Moreover, the statute of frauds does not prevent the option from belonging to the bankruptcy estate.[5]

Moreover, Kurlemann does not have a right to a bench trial, particularly when the government does not consent to a bench trial. *United States v. Martin*, 704 F.2d 267, 271 (6th Cir. 1983). *See also Fitzgerald v. Withrow*, 292 F.3d 500, 503 (6th Cir. 2002)

---

[5] Defendant also cites the Rule Against Perpetutities, but does not explain how the Rule applies. Regardless, the RAP is an affirmative defense which can be waived. *Treinen v. Kollasch-Schleuter*, 179 Ohio App. 3d 527 (1st Dist. 2008).

(defendant "does not have a constitutional right to demand a bench trial"). Therefore, the bankruptcy fraud charges will be tried before a jury.

### C.    Motion For Relief From Prejudicial Joinder And To Sever Bankruptcy Counts

Defendant requests that the Court sever the bankruptcy counts (8, 9, 10) from the other counts in which he is charged because he claims that the two groups of counts are not of the same or similar character and are not based on the same acts or transactions nor part of a common scheme or plan. Mr. Kurlemann is the only defendant in Counts 8-10. The superseding indictment does not charge that Defendants Duke, Monahan, or Sannemann[6] were involved in the bankruptcy violations or the proceedings in which those violations are alleged to have occurred. Accordingly, Defendant claims that he will be unfairly prejudiced if all counts against him are tried in a single trial because there is a substantial risk that the jury will be confused and will be unable to separate the evidence concerning the disparate groups of counts and that there will be an unfair spillover of evidence between those groups of counts.

Federal Rule of Criminal Procedure 8(a) states in pertinent part:

> The indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

---

[6] Persons jointly indicted normally should be tried together. *United States v. Stull*, 743 F.2d 439 (6th Cir. 1984).

-18-

The mortgage fraud counts and bankruptcy fraud counts are properly joined pursuant to
Fed. R. Crim. P. 8(a) because the charges are of the same or similar character, that is,
fraud. Both sets of charges involve a scheme to defraud, and both sets involve
concealment and false statements. Specifically, both sets of charges are of the same or
similar character because they have the same or similar motive – that defendant was under
intense economic pressure and committed fraud to lessen such pressure. (Doc. 25 at ¶¶
41, 42, 55, 56, 59). Both sets of charges refer to Defendant's mounting debt and his
scheme to defraud creditors. (*Id.* at ¶ 76).

Absent a showing of substantial potential for prejudice, all counts charged in the
indictment are normally tried together if they arise out of the same act or transaction, are
connected together, or constitute parts of a common scheme or plan. *United States v.
Holloway*, 1 F.3d 307, 310 (5th Cir, 1993). In the instant case, both the fraud and
bankruptcy crimes arose out of the same event – Defendant's mounting debt.

Federal Rule of Criminal Procedure 14 states that:

> If the joinder of offenses or defendants in an indictment, an
> information, or a consolidation for trial appears to prejudice a
> defendant or the government, the court may order separate trials of
> counts, sever the defendants' trials, or provide any other relief that
> justice requires.

It is within the Court's discretion to sever counts for trial in order to avoid prejudice to the
defendant. Fed. R. Crim. P. 14.[7] The burden is on the defendant to demonstrate a showing

---

[7] Rules 8(b) and 14 are designed "to promote economy and efficiency and to avoid a
multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice
to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131, n.6
(1968).

-19-

of prejudice. *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985). The defendant bears a heavy burden to establish that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Specifically, he must show an inability by the jury to separate and to treat distinctively evidence that is relevant to each particular defendant on trial. *United States v. Williams*, 711 F.2d 748, 750 (6th Cir. 1983).

For example, when many defendants are tried together in a complex case, and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See Kotteakos v. United States*, 328 U.S. 750, 774-775 (1946). Additionally, evidence that is probative of a defendant's guilt, but technically admissible only against a codefendant, also might present a risk of prejudice. *Bruton v. United States*, 391 U.S. 123 (1968). Here, Defendant has not presented specific evidence that any of these circumstances exist in the instant case.

"Absent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance." *United States v. Johnson*, 763 F.2d 773, 777 (6th Cir. 1985). Even if prejudicial spillover were likely to occur, the defendant would still need to prove that such a spillover would cause him substantial prejudice. *Id.* Here, no such showing has been made. A difference in the quantum of evidence as to the counts "is not grounds to overturn a denial of severance unless there is a substantial risk that the jury could not compartmentalize or distinguish between the evidence" produced on each count.

-20-

*United States v. Williams*, 711 F.2d 748, 751 (6th Cir. 1983). When a jury is instructed to disregard certain evidence for certain purposes, courts presume that the jury understands and follows that instruction. *Holmes v. Massillon*, 78 F.3d 1041, 1047 (6th Cir.).

Accordingly, Defendant has failed to carry his burden of demonstrating that failure to sever the claims would compromise a specific trial right.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that:

1.    Defendant's motion to dismiss the bankruptcy charges (Counts 8, 9, 10) (Doc. 30) is **DENIED**;

2.    Defendant's motion for pretrial determination of a controlling legal issue (Doc. 31) is **GRANTED** in part as adjudicated herein, but **DENIED** as to the alternative for a bench trial on the bankruptcy charges; and

3.    Defendant's motion for relief from prejudicial joinder and to sever bankruptcy counts (Doc. 33) is **DENIED**.

**IT IS SO ORDERED.**

Date:    9/10/10

Timothy S. Black
United States District Judge

-21-