UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| UNITED STATES OF AMERICA, | : | Case No. 1:10-cr-14 |
|---|---|---|
| | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| BERNARD J. KURLEMANN. | : | |
| | : | |

# ORDER DENYING DEFENDANT'S MOTION FOR MISTRIAL, ACQUITTAL, AND NEW TRIAL (Doc. 135) AND ALL ORAL MOTIONS MADE DURING TRIAL

Before the Court is Defendant Bernard Kurlemann's motion for mistrial, acquittal, and new trial (Doc. 135), and the parties' responsive memoranda (Docs. 138, 163, 174). Also before the Court are all of the oral motions that the Defendant made throughout the trial. For the reasons stated herein, the motions are **DENIED**.

## I. BACKGROUND FACTS

Mr. Kurlemann was indicted and charged with six federal counts: (1) conspiracy to commit loan fraud (Count five); (2) making a false statement to a federally insured financial institution for the purpose of influencing its action on a loan application (Counts six and seven); (3) concealment of property in a bankruptcy (Count eight); (4) concealment of an asset in a bankruptcy (Count nine); and (5) making a false oath in a bankruptcy (Count 10). (Doc. 25).

Trial began on October 20, 2010, with voir dire. The case proceeded to opening statements and testimony on October 22, 2010. (Docs. 87, 97). The trial continued day to

day for 11 days, and concluded with the jury charge on November 9, 2011, whereupon, at 2:00 p.m., the jury deliberated for the balance of the day. (Doc. 129). On November 10, 2011, at 4:30 p.m., the jury returned its verdicts of guilty on all six counts. (Doc. 130). Subsequently, Mr. Kurlemann filed the motion for mistrial, acquittal, and new trial currently before the Court. (Doc. 135). Mr. Kurlemann incorporates by reference and reasserts his pretrial motions (Docs. 29, 30, 31, 32, 33, 34, 35), and his oral motions and objections made during and after trial, including his Rule 29 motions for acquittal, as well as the arguments in support of those motions and objections.

## II. ANALYSIS

### A. Motion for New Trial

"Upon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When presented with a Rule 33 motion, the district court may weigh the evidence and assess the credibility of the witnesses; "it has often been said that [it] sits as a thirteenth juror." *United States v. Solorio*, 337 F.3d 580, 589 n.6 (6th Cir. 2003). In order to obtain a new trial, Mr. Kurlemann must show that the jury verdicts were "against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). "[S]uch motions are granted only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Id.* at 593.

Mr. Kurlemann argues that this Court should grant him a new trial for the following reasons: (1) the probative value and cumulative effect of evidence related to motive was greatly outweighed by its unfairly prejudicial effect; (2) the unfairly prejudicial effect of the government's opening statement where, in violation of Mr. Kurlemann's right to remain silent, the government told the jury that the Defendant would tell the jury matters during the trial; (3) the government's unfairly prejudicial closing argument which asked the jury to convict Defendant because (a) the Musuracas would not recover their $1.1 million judgement in the bankruptcy of KBI; (b) Defendant had over $1 million in income in 2006, 2007, and 2008; (c) Defendant and his family live in a $1 million home; (d) the suggestion that Defendant could have but did not use his personal assets to pay the Musuracas the judgment; and (e) Defendant "allowed" the charged offense to happen; (4) in closing argument the government repeatedly misstated the law, made no distinction between defendant personally and lawful entities with independent legal existence and liabilities, and asked the jury to convict defendant based on lawful conduct not charged against defendant as a crime; and (5) the jury deliberated too quickly and failed to follow the Court's instructions to consider each element of each offense separately. The Court will address each argument in turn.

### 1. *Motive*

The Court finds that evidence of motive was not unfairly prejudicial, especially given the Court's instruction that proof of motive does not establish guilt. (Jury

Instructions at 17). The jury is presumed to follow the Court's instructions and there is nothing to suggest otherwise. *Greer v. Miller,* 483 U.S. 756, 766, n. 8 (1987). Moreover, personal advancement and financial gain, for example, are two well recognized motives for unlawful conduct, such as the crimes charged.[1] For example, the state of Mr. Kurlemann's financial affairs and his eagerness to sell 8662 Hampton Bay and 8657 Emerald Isle is probative of an eagerness for financial gain.[2]

### 2. *Opening Statement*

During opening statement, the prosecutor told the jury that it would "hear from" Mr. Kurlemann during the trial. (Doc. 156 at 19). While the Court finds that this statement was improper on its face, there is no evidence that it was a deliberate attempt by the prosecutor to comment on Mr. Kurlemann's right not to testify or to prejudice the jury. Moreover, the Court promptly gave a curative instruction.[3] *See, e.g., Anderson v.*

---

[1] An individual's financial distress can be very probative of a motive. *See, e.g., United States v. Logan,* 250 F.3d 350, 369 (6th Cir. 2001) (noting that income evidence was relevant to demonstrate that financial gain was the motive for the crimes charged); *United States v. Bates,* 146 Fed. Appx. 795 (6th Cir. 2005) (concluding that trial court abused its discretion in excluding evidence of defendant's financial woes, offered as evidence of motive). Stated another way, Defendant's substantial income was necessarily dependent upon his selling homes. In this way, evidence of the Defendant's income had probative value because it demonstrated what he stood to lose if he did not sell the properties. *Logan,* 250 F.3d at 369.

[2] Gov't Exs. 6.24A-3, 6.24A-4, 6.24A-6, 6.24A-6, 6.24A-9, 6.24A-10, 7.24A-3, 7.24A-5, 7.24A-7, 7.24A-8, 7.24A-9, 7.24A-10, & 7.24A-12.

[3] After the government's opening statement and a sidebar on the issue, the Court gave the following curative instruction: "The government has presented its opening statement. It is not evidence. It is a road map of what they anticipate the evidence to be. If the prosecutor said, "You're going to hear from the defendant X, Y and Z," let me remind you, it is the burden of the government and the government alone to produce evidence beyond a reasonable doubt of the truth of the charges alleged. The defendant has no burden, doesn't have to prove anything, doesn't have to call any witnesses, doesn't have to take the stand if he doesn't want to, and you may not use that against him. Those are the instructions that I have given you. Those are the instructions I have repeated to you, and I appreciate your close attention and understanding."

*Nelson,* 390 U.S. 523, 524 (1968) (error is harmless unless comment is extensive and inference of guilt from silence is stressed to jury as basis for conviction).[4] The Sixth Circuit notes that:

> "The record discloses no evidence that the prosecutor deliberately commented on defendant's failure to testify, and we do not find manifest intent if some other explanation for the prosecutor's remark is equally possible. In this light, we do not consider the prosecutor's remark as a deliberate attempt to prejudice the jury on the basis of defendant's failure to testify, but rather an attempt to comment on defendant's failure to support his theory of the case."

*United States v. Ursery,* 109 F.3d 1129, 1135 (6th Cir. 1997). Additionally, the Court instructed the jury in its final instructions that "[a] defendant has an absolute right not to testify. The fact that he did not testify cannot be considered by you in any way. Do not even discuss it in your deliberations." (Jury Instructions at 51). Therefore, the Court finds that the prosecutor's isolated comment is insufficient to warrant a new trial.

### 3. *Closing Argument*

In its closing argument, the government made the following statement related to the bankruptcy charges:

> "If we go back to that timeline, what's interesting now is that because KBI filed bankruptcy, the defendant now lives at 6592 Sherborne Court on Lot 100, with an interest only construction loan payment of 4.5 percent. That's a good deal. He gets to live in this house where his wife has her hair salon and they have their pool, because KBI filed bankruptcy. Lot 100 was transferred, and the option to buy it back was never disclosed. Well played. Well played don't you think? And guess what? They live in this 8,000 square foot house. And do you know

---

[4] *See also Graham v. Dormire,* 212 F.3d 437, 439 (8th Cir. 2000) (indirect comments on the defendant's failure to testify are a constitutional violation "if they manifest [an] intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify.").

-5-

> what the Musuracas have gotten, who won a $1.21 million
> judgement against Kurlemann Builders? Zero. Nothing.
> Ladies and gentlemen, there was a scheme to defraud the
> creditors, all the creditors. . . ."

(N.T., 11/9/10 at 43). (*See also* Gov't Exs. 8.1, 8.9, 8.11, 8.24, 8.25, 8.25A, 8.25B).

Defendant moved for a mistrial because of the government's alleged appeal to "bias and prejudice and using the Musuracas as a reason to convict." (*Id.* at 46). Specifically, Defendant argues that the government unfairly urged the jury to convict him because he lived in a home valued at $1,000,000. Mr. Kurlemann refers to this prejudicial commentary as "class warfare."[5] (Doc. 163 at 56). Additionally, Mr. Kurlemann argues that the government was improperly "attacking the company's constitutional right to file a bankruptcy and appealing to the bias and prejudice of this jury by laying that thought."

---

[5] "The line between statements that are appeals to class prejudice that are highly improper and cannot be condoned and statements regarding class that are relevant to the issues at hand is not easily drawn. It is especially difficult to draw when an accused's motivation is at issue, and when, as here, the alleged motivation is financial." *United States v. Jackson-Randolph*, 282 F.3d 369, 378 (6th Cir. 2002) (citing *United States v. Derman*, 211 F.3d 175 (1st Cir. 2000)). All of the facts argued by the government were in evidence. The bankruptcy petition showed that the assets of KBI were approximately $61,907, while the liabilities were $1,857,880. (Gov't Ex. 8.1). KBI owed the Musuracas $1,152,073. *Id.* Mr. Kurlemann admitted that he received distributions, guaranteed payments, and wages from his various entities in 2006 of $1,852,098; in 2007 of $1,448,120; and in 2008 of $948,280. (Def. Exs. D4.4A, D4.4B, D4.4C). It is well established that a prosecutor has the right to urge upon the jury all reasonable inferences and deductions from the evidence. *United States v. Schwartz*, 831 F.2d 1064 (6th Cir. 1987). Moreover, intent to defraud may be proven by circumstantial evidence. *United States v. Stull*, 743 F. 2d 439, 442 (6th Cir. 1984) (holding that circumstantial evidence may be used to establish fraudulent intent). A "scheme to defraud" embraces conduct which deviates from "moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *United States v. Daniel*, 329 F. 3d 480, 486 (6th Cir. 2003).

*Id.*[6]

After closing, the Court denied a motion for mistrial on this issue because the jury was properly instructed that bias, sympathy or prejudice should not influence its decision in any way. (Jury Instructions at 3). The Court renews its reasoning upon the motion for mistrial in denying Defendant's current motion for a new trial.

In rebuttal, the government argued that:

> "In this life, your actions fall into three categories: You create the situation, you promote the situation, or you allow the situation. CPA. That's the important CPA in this case. Because if he did any of those, create, promote, allow, you must find him guilty."

(N.T., 11/9/10 at 57).

At the end of rebuttal, Mr. Kurlemann renewed his previous motion for mistrial because the government stated that "the jury could convict if Mr. Kurlemann allowed the events to happen, and that is not the standard of proof required for the elements of the offense." *Id.* at 61. The Court denied the motion because the jury was fully instructed and the Court anticipated that the jury will follow the Court's instructions.[7] *Id.* The

---

[6] There is no constitutional right to a bankruptcy discharge. *United States v. Kras*, 409 U.S. 434, 447 (1973) ("The mere fact that Congress has delegated to the District Court supervision over the proceedings by which a petition for discharge is processed does not convert a statutory benefit into a constitutional right of access to a court."). *In re Krohn*, 886 F.2d 123, 127 (6th Cir. 1989) ("There is no constitutional right to a bankruptcy discharge, and the 'fresh start' provided for by the Code is a creature of congressional policy.").

[7] (*See, e.g.,* Jury Instructions at 3).

motion for a new trial is similarly denied. The government "is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982). The Sixth Circuit permits attorneys to appeal to jurors' common sense in closing arguments. *United States v. Lattner*, 385 F.3d 947, 960 (6th Cir. 2004) (finding no violation of defendant's right to fair trial where prosecutor appealed to jurors' "common sense").

### 4. *Government's Conduct at Trial*

Defendant raises several claims of prosecutorial misconduct that allegedly require his convictions be vacated. The Court evaluates claims of prosecutorial misconduct using a two-step inquiry. "First, the Court must determine if the government's statements were improper." *United States v. Abboud*, 438 F.3d 554, 584 (6th Cir. 2006). If the statements were in fact improper, then we "must decide whether the statements were flagrant." *Id.* Relief based upon prosecutorial misconduct is granted only if the misconduct is "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *United States v. Wells*, 623 F. 23d 332, 338 (6th Cir. 2010) (quoting *United States v. Payne*, 2 F. 3d 706, 712 (6th Cir. 1993)). *See also United States v. Wettstain*, 618 F.3d 577, 588 (6th Cir. 2010) (explaining that prosecutor's comments may be evaluated by the standard of whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process.").[8] The "flagrancy inquiry" involves four factors:

---

[8] "The inquiry is whether allegedly improper behavior, considered in the context of the entire trial, including the conduct of the defense counsel, affected the jury's ability to judge the evidence fairly." *United States v. Endicott*, 803 F.2d 506, 513 (9th Cir. 1986).

-8-

(1) whether the remarks tended to mislead the jury or to prejudice the accused [including whether the trial judge gave an appropriate cautionary instruction to the jury];

(2) whether they were isolated or extensive;

(3) whether they were deliberately or accidentally placed before the jury; and

(4) the strength of the evidence against the accused.

*Abboud*, 438 F.3d at 584. If the Court determines that the statements were not flagrant, then "the [c]ourt will reverse only if (1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the court failed to give a curative instruction." *Id*.

Mr. Kurlemann complains that the government repeatedly misstated the law and asked the jury to convict Defendant on lawful conduct. Even if the government did misstate the law, and the Court has not made that finding, the Court specifically admonished that the jury must follow the law given by the Court, not the lawyers.[9] (Jury Instructions at 3). However, Mr. Kurlemann objects to the jury instruction for the substantive loan fraud which included that "a statement may be false when it contains a half truth or when it conceals a material fact." (Doc. 163 at 30). The Court has already addressed this issue in both the jury charge conference and its previous order (Doc. 66 at

---

[9] Where any prejudice to the defendant will be relieved by a curative instruction, it is not an abuse of discretion to deny a motion for mistrial. *United States v. Bennett*, 975 F.2d 305, 307 (6th Cir. 1992).

14),[10] and therefore declines to revisit the issue.

Additionally, there is nothing in the record to support the allegation that the government intentionally made no legal distinction between Mr. Kurlemann and his entities. Even if this were true, Defendant fails to state why he was unfairly prejudiced or how this is a miscarriage of justice. Moreover, there was significant evidence that Mr. Kurlemann controlled all of his entities. (Gov't Exs. 6.1A, 7.1, 8.1, & 11).

The conduct of the government at trial was neither improper nor flagrant.

### 5. *Jury Deliberations and Jury Instructions*

Finally, Mr. Kurlemann contends that the jury's verdict was reached too quickly and, therefore, they did not follow the Court's instructions. Defendant cited no law in support of his assertion that the length of jury deliberations reflects any bias against him. Furthermore, the Tenth Circuit has ruled against this very argument. *United States v. Lawrence*, 405 F.3d 888, 904-05 n.11 (10th Cir. 2005) (denying motion for mistrial where jury deliberations lasted two hours and finding no evidence of prejudice against defendant). The jury deliberated for more than a day and nothing in the record suggests that the jury did not follow the Court's instructions.

Accordingly, sitting as a 13th juror, the Court finds that competent evidence sustains the convictions, *i.e.*, that the jury verdicts are not against the manifest weight of the evidence, and, therefore, the Defendant's motion for a new trial is denied.

---

[10] *See, e.g., United States v. Walker*, 871 F.2d 1298, 1309 (6th Cir. 1989) ("A statement may be false when it contains a half truth or when it conceals a material fact."); *United States v. Wells*, 63 F.3d 745, 751-52 (8th Cir. 1995) ("omissions may constitute a false statement where honest statements would otherwise be made."); *United States v. Trice*, 823 F.2d 80, 86 (8th Cir. 1987) (a false statement for the purposes of Section 1014 can include the failure to disclose material information needed to avoid deception in connection with a loan transaction).

### B. Motion for Mistrial

"The primary concern in ruling upon a motion for a mistrial is a determination of the fairness to the accused." *United States v. Blakeney*, 942 F.2d 1001, 1030 (6th Cir.1991) (citing *United States v. Atisha*, 804 F.2d 920, 926-27 (6th Cir.1986)).

#### *1. Opening Statement*

The motion for mistrial and motion for a new trial regarding the government's opening statement are essentially the same. For the same reasons stated above, the motion for a mistrial is denied.

#### *2. Closing Argument*

The motion for mistrial and motion for a new trial regarding the government's closing arguments are essentially the same. For the reasons stated above, the motion for a mistrial is denied.

#### *3. Pretrial*

##### a. Grand Jury

Defendant claims that the government presented insufficient probable cause to the grand jury to indict him. Additionally, Mr. Kurlemann claims that he was unfairly prejudiced by the "spillover effect" of the evidence before the grand jury against Terrence Monahan and Bryan Sanneman. (Doc. 161 at 44).

"The return of an indictment by a grand jury is a conclusive determination of the issue of probable cause. If the indictment is fair upon its face and properly found and

returned, the trial court cannot look behind the indictment to determine if it is based on inadequate or incompetent evidence." *United States v. Kysar*, 459 F.2d 422, 424 (10th Cir. 1972). "It is not necessary for the district court to probe into the secrecy of the grand jury proceedings." *United States v. Battista*, 646 F.2d 237, 242 (6th Cir. 1981). There is a presumption of regularity which attaches to such proceedings and the Defendant has a difficult burden to prove any irregularity. *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976), *cert. den.* 429 U.S. 1062 (1977). The validity of an indictment is not affected by the type of evidence which is considered by a grand jury even though inadequate or incompetent. *United States v. Calandra*, 414 U.S. 338 (1974). The return of an indictment by a grand jury raises a rebuttable presumption that probable cause exists. This presumption is rebutted when the plaintiff shows the grand jury heard perjured testimony or was otherwise irregular. *Friedman v. United States*, 927 F.2d 259 (6th Cir. 1991). The actions complained of in the instant case are not clearly prejudicial and do not satisfy Defendant's burden of affirmatively showing a biased grand jury. *Laughlin v. United States*, 385 F.2d 287, 291-92 (D.C. Cir. 1967).

### b. *Indictment*

Defendant alleges that the government engaged in a pattern of unfairly prejudicial statements about Mr. Kurlemann in the indictment and superseding indictment. Specifically, Defendant claims that the indictment improperly suggested that he conspired with Eric Duke, Bryan Sanneman, and Terrence Monahan, when in fact he only allegedly

conspired with Eric Duke. Additionally, Defendant argues that the fact that the government rewrote the indictment in a superseding indictment to add the bankruptcy charges is evidence that the original indictment was improperly drafted. Defendant argues that the indictment, especially count five, the conspiracy charge, contained numerous instances of lawful conduct by Mr. Kurlemann that the government argues was illegal.

This Court previously rejected the Defendant's motion to strike "surplussage" in the indictment (Doc. 68), and the Court finds no reason to reexamine the arguments at this time. Additionally, Defendant fails to allege how the language of the indictment requires a mistrial. The jury was never provided with a copy of the indictment and therefore even if it contained prejudicial surplussage, it did not prejudice the Defendant.

### c. *False and Misleading Statements to the Public*

Defendant argues that the government's January 29, 2010 media release was false and misleading.

> A two-year investigation by the Greater Cincinnati Mortgage Fraud Task force has resulted in a seven-count indictment charging two Cincinnati area home builders, a former Hungtington National Bank vice president, and a self-employed tax preparer and interior designer with participating in a mortgage fraud scheme to sell four high-end luxury properties to 'straw buyers.'"

Defendant alleges that the media release continues the false statement that Mr. Kurlemann was involved in a conspiracy that was not charged in the Indictment, *i.e.*,

bank fraud. Additionally, a June 17, 2010 media release stated that Mr. Kurlemann was charged with bankruptcy fraud "by hiding assets when he filed bankruptcy on behalf of his company Kurlemann Builders, Inc."

The Court finds no reason to analyze the content of the releases because Defendant fails to explain how these statements warrant a mistrial. Defendant has failed to present any evidence that the jury saw or relied on these media releases when making their determination. Moreover, the Court explicitly directed the jury "not to conduct any independent research, reading or investigation about the case" and to "make your decision based only on the evidence that you saw and heard here in court." (Jury Instructions at 6, 60). There is no evidence that the jury ignored the Court's instructions.

### C. Motion for Acquittal

Pursuant to Federal Rule of Criminal Procedure 29(a) and (c), the court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001).[11] In deciding a Rule 29 motion, the Court draws all inferences from the evidence in favor of the prosecution. *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995). Unlike a motion for new trial under Rule 29, the court does not weigh the

---

[11] "When reviewing for the sufficiency of evidence in support of a jury verdict, this Court views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony." *Abboud*, 438 F.3d at 589.

evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002).[12] The question the court must ask is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989).

Defendant claims that there was insufficient evidence to prove the following: (1) the agreement element for conspiracy in Count Five; (2) the purpose to influence element in Counts Six and Seven; and (3) the elements of the bankruptcy charges based on the oral understanding about Lot 100 in Counts 8, 9, and 10.

### 1. *Agreement*

According to the evidence, Mr. Kurlemann told co-conspirator Eric Duke that he needed to sell 8662 Hampton Bay because "he needed to stop – or cut the bleeding." (N.T., 10/22/10 at 2-44). Mr. Kurlemann told Mr. Duke to "Get it done, whatever it takes, whatever we need to say, let's just do it." (Doc. 118 at 65). Mr. Duke testified that once he was advised that the lender would not agree to a 100% loan as reflected in the November 9, 2006 purchase contract, he discussed the initial addendum with Kurlemann.

---

[12] "The Supreme Court has observed that the granting of a motion for aquittal . . . will be confined to cases where the prosecutor's failure is clear." *United States v. Overmyer*, 867 F.2d 937, 938 (6th Cir. 1989). To survive a Rule 29 motion, the government need not exclude every hypothesis except that of guilt. *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984). The Sixth Circuit has noted that even "the uncorroborated testimony of a single accomplice may support a conviction under federal law." *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985).

(*Id*. at 2-62 & 2-64 - 2-65; Gov't Ex. 6.1G). Mr. Kurlemann knew that the addendum falsely stated that he accepted "$229,000 to be applied as down payment to meet qualifications for the loan as specified by the lender, received by the builder as of 12/1/06." *Id*. By signing the addendum, Defendant agreed to make this false statement with Mr. Duke because Mr. Kurlemann never received $229,000 from Ms. Webster. Although Mr. Kurlemann may not have signed the revised version of the addendum that simply broke out the down payment of $200,000 from the personal property of $29,000, the evidence showed that he not only knew about the revised addendum but also knew that this addendum was sent to the lender. (Gov't Ex. 6.1A). Mr. Kurlemann swore that the false statement on the revised addendum was his own when he publicly filed his affidavit. (*Id*.) Because Mr. Kurlemann agreed to these false statements on the addenda, there was sufficient evidence to prove the agreement element for the conspiracy.

Mr. Kurlemann argues in part that Mr. Duke was not competent to testify to Defendant's intent. With respect to the element of intent, the Court instructed the jury that "[a]n agreement can be proved indirectly, by facts and circumstances which lead to a conclusion that an agreement existed." (Jury Instructions at 29). The instructions also stated that "[t]he defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he knew the conspiracy's main purpose." (*Id*. at 31). There was no requirement that the jury base its decision on direct evidence. The Sixth Circuit will reverse a judgment for insufficiency of the evidence only if this

judgment is not supported by substantial and competent evidence upon the record as a whole. This rule applies whether the evidence is direct or wholly circumstantial. *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). It is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt. *Id.*

### 2. *The Purpose to Influence*

Both the initial and revised addendum to the November 9, 2006 purchase agreement for 8662 Hampton Bay specifically state that Mr. Kurlemann accepted the down payment "to meet qualifications for the loan as specified by the Lender." (Gov't Exs. 6.1G & 6.1A). The words in these documents are evidence that Defendant made the false statement with the purpose to influence the bank. Moreover, the settlement statement indicated that deposit or earnest money of $200,000 had been paid as part of the transaction. (Gov't Ex. 6.3). Defendant's failure to disclose the promissory note that was signed on the same day as the closing was evidence that Mr. Kurlemann thought the deposit would influence the bank. (*Id.*; Gov't Ex. 6.5A; N.T., 11/3/10 at 28). Failure to disclose the promissory note was evidence that Defendant knew the bank would be influenced by the false statements.

Similarly, Defendant's certification to the statement on the HUD for 8657 Emerald Isle which stated, "Earnest money retained by seller $280,000" is evidence that the false statement was made with the purpose to influence the bank. (Gov't Ex. 7.3). Again, Mr. Kurlemann's failure to disclose that the deposit was essentially his own money was

conduct indicative of his knowledge that such disclosure would affect loan approval. (N.T., 11/3/10 at 41-43). Therefore, viewing the evidence in the light most favorable to the government, the Court denies the motion for acquittal and sustains its initial ruling on the motion to dismiss (Doc. 66).

### 3.  *Oral Understanding about Lot 100*

Defendant Kurlemann filed a bankruptcy petition on behalf of his company Kurlemann Builder's, Inc. ("KBI") (Gov't Ex. 8.1). The Musuracas are listed as the largest creditor in the bankruptcy due to their substantial verdict against KBI. (*Id.*) All the details related to the transfer of Lot 100 are not disclosed in the petition. In particular, the oral option to purchase or repurchase Lot 100 was not disclosed nor was the mortgage RNS took on Mr. Kurlemann's personal residence. (*Id.*; Gov't Exs. 8.5C, 8.8, 8.8A, & 8.8E).[13]

Although neither Mr. Kurlemann nor any of his entities owned Lot 100 as represented to the bankruptcy trustee and creditors, Mr. Kurlemann designed a market home on the lot. (Gov't Exs. 8.9, 8.10, & 8.11). The design plans contained evidence that the house to be built on Lot 100 was intended to be Mr. Kurlemann's personal residence. (*Id.*) Even though RNS owned Lot 100 in name, Mr. Kurlemann had always kept his interest in the lot. At the meeting of creditors, Mr. Kurlemann failed to disclose

---

[13] An option to purchase lots at Vista Pointe was disclosed in Schedule B of the bankrupcy petition which indicates that Defendant knew an option was an asset that should be disclosed (Gov't Ex. 8.1).

that his company Kurlemann Custom Homes ("KCH") had received any asset of KBI, when KCH was going to purchase Lot 100 from RNS within a few hours of the hearing. (Gov't Ex. 8.1A). Based on this evidence, the Court finds that rational triers of fact could conclude that the purposeful failure to disclose the transaction related to Lot 100 on the bankruptcy petition, schedules, and statement of financial affairs, coupled with defendant's testimony at the 341 hearing, was sufficient evidence to prove the elements of the bankruptcy charges, particularly when the disclosure should have been made on Schedule B, Schedule G, and the Statement of Financial Affairs. (Gov't Ex. 8.1). Mr. Kurlemann stipulated that the statement of financial affairs and other schedules were filed under penalties of perjury, and thus the evidence was sufficient to support a verdict that Mr. Kurlemann made a false oath. Therefore, the motion for acquittal is denied.

The Court has already determined *supra* that a new trial is not warranted under the broader standard of review provided by Rule 33. "*A fortiori* this court, under the much narrower standard provided by Rule 29, must conclude that a rational jury could have found that the elements of each of the offenses of conviction were proved beyond a reasonable doubt." *United States v. Jones*, No. 1:07cr25, 2008 U.S. Dist. LEXIS 109734, (E.D. Tenn. Nov. 3, 2008). Accordingly, because the Court finds that the evidence viewed in a light most favorable to the prosecution supports the jury's verdict as to all counts, and for the reasons previously stated on the record in denying prior motions for judgment of acquittal, the motion is again denied.

### III. CONCLUSION

Accordingly, for the reasons stated herein, Defendant's motion for mistrial, acquittal, and new trial (Doc. 135) is hereby **DENIED**, as are all oral motions made during trial, including the Rule 29 motions.

**IT IS SO ORDERED.**

Date: 3/22/11

Timothy S. Black
United States District Judge